


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>*Plaintiff,*<br><br>vs.<br><br>FONBUENA LAW FIRM CHTD d/b/a TIMESHARE DEFENSE ATTORNEYS, RICHARD FONBUENA JR,<br><br>*Defendants*. | Case No. **1:22-CV-02541**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED**<br><br>**JUDGE KENDALL**<br>**MAGISTRATE JUDGE HARJANI** |

Plaintiff, Jorge Alejandro Rojas, ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, its implementing regulations, the Illinois Telephone Solicitations Act, and the Illinois Automatic Telephone Dialers Act, against Defendants Fonbuena Law Firm Chtd doing business as Timeshare Defense Attorneys ("TDA"), and Richard Fonbuena, Jr ("Fonbuena"), (collectively "Defendants") and alleges based on personal knowledge and information and belief, as follows:

**INTRODUCTION**

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, its implementing regulations, 47 C.F.R § 64.1200, the Illinois Telephone Solicitations Act ("ILTSA"), 815 ILCS 413, and the Illinois Automatic Telephone Dialers Act, 815 ILCS 305.

3. This case involves a campaign by Defendants to obtain business via itself or affiliates making telemarketing calls, despite not having the required consent to do so, to solicit business from individuals who have entered into timeshare agreements and wish to withdraw from them.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as it regularly and systemically conducts business in the state of Illinois. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Plaintiff resided within this district when the calls were made.

6. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

9. Defendant Fonbuena Law Firm Chtd doing business as Timeshare Defense Attorneys ("TDA") is a Nevada Domestic Professional LLC, with a registered agent of Fonbuena

Law Firm, Chtd. c/o President located at 5550 Painted Mirage Rd, Ste 320, Las Vegas, NV, 89149. TDA also has an office located at 8149 E Evans Rd, Suite 1 Scottsdale, AZ 85260.

10. Defendant Richard Fonbuena Jr ("Fonbuena") is a managing member of Defendant TDA, and is located at the same address as TDA.

11. Defendants are each a person as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

13. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012)

14. The TCPA provides a private cause of action to persons who receive such automated or -pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

15. The TCPA makes it unlawful to receive more than one telephone call which violates the TCPA regulations "Do Not Call" provisions. *See* 47 C.F.R. § 64.1200(c)(2).

16. The TCPA provides a private cause of action to persons who receive such "Do Not Call" calls. *See* 47 U.S.C. § 227(c)(5)(B).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

I*n the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

18. The TCPA applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

19. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

20. In Illinois, the Automatic Telephone Dialers Act ("ATDA") prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/30(b).

21. In Illinois, the ATDA prohibits tampering or interfering with the functions of Caller ID. 815 ILCS 305/15(d).

22. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable

under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

23. Under the TCPA, individual party Defendants are personally liable for the acts and omissions alleged in this Complaint.

24. Fonbuena directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

25. The TCPA requires "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R § 64.1200(d)(1).

26. The TCPA's command for a private right of action at times causes Defendants to imagine a world where the law "limits the right to sue under the TCPA to those who are ignorant of their right to sue under the TCPA." *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d. 1187, 1196 (M.D. Tenn. 2017).

## ALLEGATIONS

27. At all times relevant hereto, Plaintiff maintained and used a residential telephone line, with phone number (424) XXX-1582.

28. Plaintiff's phone number is not associated with a business and is used by Plaintiff solely.

5

29. Plaintiff is the account holder and customary user of his phone number.

30. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

31. Plaintiff registered his phone number on the Do Not Call Registry in order to obtain solitude from invasive and harassing telemarketing calls. The call prevented Plaintiff from using his phone for legitimate purposes.

32. References to a call from Defendants refers to a call from Defendants, or a call made by its affiliate, partner, or other entity having the authority to market services Defendants sells.

33. Fonbuena owned, operated, and was an officers, employees, and/or agents of TDA. At all material times referenced herein, Fonbuena participated in the conduct that was directed at Plaintiff. The acts and omissions performed by Fonbuena giving rise to liability in this matter occurred, or were performed, or directed at this District.

34. **Call 1.** On or about May 12, 2022, at 1:57 PM Chicago time, Plaintiff received a telephone call from Defendants, from 424-250-4777.

35. When Plaintiff picked up the phone, he heard an automated and pre-recorded message state they were "Emily" and that they are calling regarding whether the recipient had any timeshare agreements he wanted to cancel. After answering in the affirmative, the recording continued to transfer Plaintiff to "Jolie Cooper" who asked Plaintiff questions such as what timeshare company he wanted to exit, how much he was behind, etc. Cooper stated that they were one of the only law firms in the country that did this work. Following the conversation, Cooper emailed Plaintiff confirming the existence of the conversation, as well as the link to the TDA website.

36. During the transfer from "Emily" to Cooper, the automated voice of Emily spoke with Cooper saying that a prospective client on the line. During this warm transfer, Plaintiff received another telemarketing call he alleges was from Defendants.

37. Plaintiff attempted calling back the number of Call 1 back, but it is a spoofed number that does nothing.

38. **Call 2.** On or about May 12, 2022, at 2:00 PM Chicago time, Plaintiff received a telephone call from Defendants, from 323-831-1204.

39. Call 2 was received while the warm transfer between Emily and Cooper was occurring in Call 1.

40. Plaintiff attempted calling back the number of Call 2 back, and he heard a beep, followed by an instant disconnect.

41. The above calls were made by Defendants for the purpose of soliciting a service – timeshare exit programs.

42. On May 12, 2022, Plaintiff requested Defendants add his number to their internal do not call list as well as produce a copy of their do not call list policy. As of the time Plaintiff transmitted this filing, Plaintiff has not received that policy.

43. Defendants masked their telephone number to not reveal their true telephone number. When Plaintiff called the number, an operator states that the call was placed to a number not currently set up to receive calls.

44. The conduct alleged in this action was made willful and knowingly, for reason including that the caller did not identify himself by name or entity, in order to obfuscate who they were, and the use of Caller ID masking.

45. Defendants are currently engaged in other litigation, brought by Wyndham Vacation Resorts, Inc, alleging that they are violating the Lanham Act. *See Wyndham Vacation Resorts, Inc, et. al v. Timeshare Exit Hotline, et. al,* 6:22-cv-00674 (M.D. Fl., filed April 6, 2022).

46. Defendants' calls to Plaintiff utilized an automatically generated and/or pre-recorded voice.

47. Defendants' phone call utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

48. Defendants did not have any consent to call Plaintiff.

49. Defendants are not an organization exempt from the TCPA.

50. Defendants' calls to Plaintiff were a "telephone solicitation" as defined by the TCPA.

51. Defendants' calls to Plaintiff were an "unsolicited advertisement" as defined by the TCPA.

52. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

53. Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers in an effort to evade TCPA liability.

54. Defendants made further efforts to conceal their identity by transmitting a deceptive telephone number with a local area telephone codes to Plaintiff's telephone caller identification ("Neighbor Spoofing"). Neighbor Spoofing is done to deceive the called party into believing the telemarketer is a local person or business, increasing the likelihood that the telemarketing call will be answered.

55. The impersonal and generic nature of Defendants' call demonstrate that Defendants utilized an Automatic Telephone Dialing System (ATDS) and/or a pre-recorded voice in making the calls.

56. In total, Defendants and/or their affiliates placed at least two (2) telephone solicitation calls to Plaintiff.

57. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants.

58. Defendants have a pattern and/or practice of failing to comply with the TCPA, the IL Telephone Solicitations Act, and the IL Automatic Telephone Dialers Act.

59. The foregoing acts and omissions were in violation of the TCPA, the IL Telephone Solicitations Act, and the IL Automatic Telephone Dialers Act.

60. Other Defendants may be named in this case following discovery, including for example any other individuals or entities who directed the unlawful conduct to be made.

61. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

62. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

63. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

64. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

65. Plaintiff is also entitled to an award of costs.

66. Defendants' calls were not made for "emergency purposes."

67. Defendants' calls to Plaintiff were made without any prior express written consent.

68. Defendants contacted Plaintiff even though Plaintiff was on the Do Not Call Registry.

69. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

70. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

71. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

72. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants' and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

73. To the extent Defendants, outsourced their illegal robocalling to make the initial telephone call, Defendants are still liable for calls that violate the TCPA.

74. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to

judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

75. The May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. At 6587 n. 107.

76. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. At 6593.

77. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 (¶ 34).

78. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n.107.

11

79. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

80. Defendants hired, permitted, and enjoyed the benefits of any lead generator and call centers mass robocalling.

81. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

82. For the counts identified below, Defendants are directly liable as the party that caused the unlawful calls to be placed.

83. Plaintiff requests a jury trial on all issues so triable.

### COUNT 1.
### Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

84. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

85. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least two (2) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

86. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

87. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $3,000.00 plus costs and any other remedy deemed appropriate.

## COUNT 2.
### Initiating A Telephone Solicitation To A Telephone Subscriber Who Has Registered His Number On The Do-Not-Call List At Least 31 Days Prior To The Telephone Call. 47 C.F.R. § 64.1200(C)(2)

88. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

89. Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

90. Defendants called Plaintiff's telephone at least two (2) times after Plaintiff's telephone had been registered on the Do Not Call Registry for at least 31 days before Defendants' calls, in violation of 47 C.F.R. § 64.1200(c)(2).

91. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(c)(5)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each of the two (2) telephone calls.

92. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $3,000.00 plus costs and any other remedy deemed appropriate.

## COUNT 3.
### Violations of Do Not Call List Policy provisions, 47 C.F.R § 64.1200(d)(1)

93. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

94. The TCPA requires "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R § 64.1200(d)(1).

95. Plaintiff requested the policy from Defendants, and, as of transmitting this filing, has not been provided with said policy.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $500.00 plus costs and any other remedy deemed appropriate.

## COUNT 4.
### Violations of The Illinois Telephone Solicitations Act, 815 ILCS 413

96. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

97. The Illinois Telephone Solicitations Act, inter alia, prohibits the making of a call in a manner which impedes the function of caller ID. 815 ILCS 413/15(c).

98. The Illinois Telephone Solicitations Act allows for the recovery of three times the actual damages assessed for a violation of the Act.

99. Each call Defendants made impeded the function of caller ID by utilizing a fake or blocked phone number.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of three times actual damages plus costs and any other remedy deemed appropriate.

## COUNT 5.
Violations of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1

100. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

101. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

102. Defendants did not have the consent of Plaintiff to play a prerecorded message placed by an autodialer.

103. The ATDA prohibits impeding the function of Caller ID.

104. Nonetheless, Defendants or one of their affiliates or vendors impeded the function of caller ID and played a pre-recorded message.

105. The ATDA allows for the recovery of statutory damages of $500 per violation.

106. Defendants violated the ATDA's pre-recorded message provisions each time it called Plaintiff, and the Caller ID provisions each time it masked their caller ID, for a total violation count of four (4) times.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $2,000.00 plus costs and any other remedy deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and or severally, in an amount to be more fully determined at trial, but at least $8,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered;

B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b);

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C);

D. Statutory damages of $500.00 per call for each and every violation pursuant to 47 U.S.C. § 227(c)(5)(B);

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5)(C);

F. Statutory damages of $500 per violation for violations of the Illinois Automatic Telephone Dialers Act;

G. All reasonable attorneys' fees, witness fees, court costs, pre and post-judgment interest, and other litigation costs incurred by Plaintiff;

H. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

I. Statutory damages of $500 per violation of the TCPA's implementing regulations, 47 C.F.R. § 64.1200(d)(1);

J. Leave to amend this Complaint to conform to the evidence presented at trial; and

K. Any other relief this Court deems proper.

Respectfully submitted,

Dated: May 12, 2022

/s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582